#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

| | |
|---|---|
| MARCY RENNEBERG, ALINE RENNEBERG, § <br> WANDA WEBB, LELAND WEBB, § <br>   *Plaintiffs,* § <br> § <br> v. § <br> § <br> PINE ARBOR, SAN GABRIEL § <br> REHABILITATION AND CARE CENTER, § <br>   *Defendants.* § | **Cause No. 1:21-cv-142-LY** |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs MARCY RENNEBERG, her mother ALINE RENNEBERG and WANDA WEBB and her husband, LELAND WEBB, two pairs of individuals separated by policies implemented by nursing homes, come now to file this Original Complaint against San Gabriel Rehabilitation and Care Center and Pine Arbor ("Defendant Nursing Homes") for executing these one-dimensional and harmful policies.

Defendants violated the statutory rights of Plaintiffs by prohibiting family visitors, damaging the health of residents in these facilities, and cost precious time to the residents and their families. The Defendant Nursing Homes breaches resulted in their mental anguish by disallowing residents to visit with loved ones even when they had medical power of attorney for residents, resulting in elder abuse and violating the Americans with Disabilities Act by failing to provide equal access to medical care to their residents.

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. 2

TABLE OF AUTHORITIES ..................................................................................................... 3

I.      PARTIES ....................................................................................................................... 4

II.     JURISDICTION AND VENUE .................................................................................. 4

III.    RELEVANT AUTHORITIES ..................................................................................... 5

IV.     FACTS ........................................................................................................................... 5

    A. The Defendant Nursing Homes separated families during their last days together. ............ 5

       1.   MARCY RENNEBERG and her mother, ALINE RENNEBERG        5

       2.   WANDA WEBB and her husband, LELAND WEBB                7

       3.   The Approach                                                 8

V.      CLAIMS ........................................................................................................................ 9

    A. Claim 1 -- Declaration -- Defendants violated Tex. Human Res. Code §102.003(g). ......... 9

    B. Claim 2 – Declaration – Defendants violated the ADA. ........................................................ 9

    C. Claim 3 –Defendants violated the Texas Human Resources Code & Centers for Medicare and Medicaid Services Regulations.................................................................................... 11

    D. Claim 4 – Declaration -- Breach of Contract & Mental Anguish...................................... 13

    E. Claim 5 -- Declaration -- San Gabriel nursing home violated Title 40, Rules §§ 19.401 and 19.402 of the Tex. Admin. Code by denying the right to visitors to its residents.............. 14

    F. Claim 6 -- Intentional Infliction of Emotional Distress....................................................... 15

ATTORNEY'S FEES ................................................................................................................ 15

CONDITIONS PRECEDENT .................................................................................................. 16

PRAYER FOR RELIEF ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Shepherd v. Ledford*, 962 S.W.2d 28 (Tex. 1998) ............................................................................ 4

**Statutes**

29 U.S.C. §794a ................................................................................................................................ 14

29 U.S.C.S. §§ 790 et seq. ................................................................................................................ 14

42 CFR § 483.10 .............................................................................................................................. 10

42 U.S.C. § 12132 ...................................................................................................................... 5, 9, 10

42 U.S.C. § 12182 ...................................................................................................................... 5, 9, 10

42 U.S.C. § 12133 ............................................................................................................................ 14

Rehabilitation Act of 1973 § 504 ................................................................................................. 9, 10

Texas Administrative Code § 19.401 .............................................................................................. 13

Texas Administrative Code § 19.402 .............................................................................................. 13

Texas Administrative Code § 506.3 ................................................................................................ 13

Texas Civil Practice and Remedies Code ........................................................................................ 14

Texas Health and Safety Code § 166.152(e) ..................................................................................... 8

Texas Human Resources Code §48.002 .......................................................................................... 10

Texas Human Resources Code, § 102.003(g) ................................................................................. 5, 8

**Other Authorities**

CMS Regulation 483.13 .................................................................................................................. 11

## I.   PARTIES

1. Plaintiffs Marcy Renneberg and Aline Renneberg are Texas residents and may be served through their attorney of record, the undersigned.

2. Plaintiff Wanda Webb is a Texas resident and may be served through her attorney of record, the undersigned.

3. Plaintiff Leland Webb was a Texas resident at the time of the filing of the suit, but passed on October 14, 2020, at 7941 Beverly Lane, Lumberton, TX 77657 in Hardin County, Texas, intestate. The Survival Statute provides that Leland Webb's surviving spouse and sole heir, Wanda Webb, is the proper party to continue as Plaintiff on behalf of his estate. Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b); Tex. Estates Code § 201.003. No administration is pending, and none is necessary because Leland Webb had no debts or property. *See Shepherd v. Ledford*, 962 S.W.2d 28 (Tex. 1998).

4. Defendant Pine Arbor is owned by Oakbend Medical Center and is a skilled nursing care facility located in Silsbee, Texas. It may be served through its Administrator Wendy K Jeselink at 705 Highway 418 West Silsbee, TX 77656.

5. Defendant San Gabriel Rehabilitation and Care Center South is owned by Limestone Hospital District and is a skilled nursing care facility located in Round Rock, Texas. It may be served through Administrator Leah Gage at 4100 College Park Drive Round Rock, TX 78665.

## II.   JURISDICTION AND VENUE

6. Plaintiffs seek relief that can be granted by courts of law or equity.

4. Plaintiffs have standing to seek monetary damages and declaratory relief because they have been damaged by the Defendants' conduct.

7. This Court has personal jurisdiction over the Defendants.

## III.   RELEVANT AUTHORITIES

6. Texas Human Resources Code, § 102.003(g) states:

An elderly individual is entitled to privacy while attending to personal needs and a private place for receiving visitors or associating with other individuals unless providing privacy would infringe on the rights of other individuals. This right applies to medical treatment, written communications, telephone conversations, meeting with family, and access to resident councils.

7. 42 U.S.C. § 12132 (Americans with Disabilities Act, Title II)

Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

8. 42 U.S.C. § 12182(b)(1)(A)(i) (Americans with Disabilities Act, Title III)

Denial of participation: It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

## IV.   FACTS

**A. The Defendant Nursing Homes separated families during their last days together.**

1. <u>MARCY RENNEBERG and her mother, ALINE RENNEBERG</u>

8. Aline Renneberg has been a resident of San Gabriel Rehabilitation and Care Center in Round Rock, Texas since September 2019. She entered San Gabriel with her husband, where they celebrated their 50th wedding anniversary in late 2019. Marcy Renneberg is their daughter and decision maker holding their medical power of attorney. Prior to any COVID-19 restrictions, Marcy visited her parents to care for, observe, and provide comfort and companionship.

9. In a clumsy and inadequate attempt to do something about COVID-19, Gov. Abbott issued executive order GA-8 on March 19, 2020, which stated,

> Order No. 3   In accordance with the Guidelines from the President and the CDC, people shall not visit nursing homes or retirement or long-term care facilities unless to provide critical assistance.

10. Aline Renneberg's husband died in July 2020 from COVID-19. Aline has been left to grieve the loss of her husband alone, without the support or comfort of family.

11. Aline Renneberg suffers from dementia and also has diabetes. Following separation from her daughter, Aline has grown increasingly more incoherent, confused, and aggressive daily. She no longer cares to eat. She has begun hallucinating. She has lost weight.

12. Marcy Renneberg, Aline's daughter and decision maker based on a medical power of attorney, was denied the right to enter San Gabriel Rehabilitation and Care Center to visit, care for, observe, and provide comfort and companionship to her mother, for approximately a year.

13. Before San Gabriel Rehabilitation and Care Center prohibited her from doing so, Marcy would visit her mother almost daily and care for her. She would check her skin for infections, cut and comb her hair, cut and clean her fingernails and toenails, make appointments to see the podiatrist, bring her food and make sure it was mashed so that Aline could eat it, put lotion on Aline's skin, and give her water to keep her hydrated. Marcy doubts the staff at San Gabriel Rehabilitation and Care Center are able or willing to provide that level of care. Nor can she check on her mother to be certain of the care she is receiving.

14. Aline Renneberg could not carry on a window or phone visit well because of her dementia. Even if she could, digital visitation is no substitute for the in-person visit, care,

companionship, and observation she is entitled to as a resident of San Gabriel Rehabilitation and Care Center.

15. Aline Renneberg's care is paid for through Medicaid funds. San Gabriel Rehabilitation and Care Center receives Medicaid funding, thus coming under the purview of Title II of the Americans with Disabilities Act.

2. WANDA WEBB and her husband, LELAND WEBB

16. Leland Webb was 85 years old and was a nursing home resident at Pine Arbor in Silsbee, Texas. He was married to his wife, Wanda, for 54 years. Leland suffered from dementia, diabetes, and congestive heart failure. His health conditions required that he received constant care which Wanda could not provide in her home. Leland had resided in Pine Arbor Nursing Facility since July 2018. He was wheelchair bound.

17. Wanda visited Leland regularly, at least several times per week, prior to Governor Abbott's orders. She provided hands-on care for him such as cutting his hair, trimming his nails, and taking him snacks. She would also play games and listen to music with him. Leland was very social, leaving his room to visit with other residents in the hallways and dining halls as much as possible. Wanda's help was integral to his care and well-being as well as his personal comfort. She would check his legs for swelling and help him move to the recliner to elevate his legs to prevent swelling due to his congestive heart failure.

18. Leland wanted in-person visits with his wife, Wanda. Pine Arbor denied that. Phone calls were impossible because of Leland's hearing issues. Window visits were also challenging, because of his hearing difficulties through a closed window. Though the facility provides video communications whenever staff is available, there were times when Leland and Wanda had called requesting services and no one was available to accommodate the request. Leland and

Wanda Webb represent the situation of thousands of nursing home residents and their family members who are currently separated.

19.   In an inexplicable contradiction of what Pine Arbor told Wanda, Wanda observed a delivery driver arrive, have his temperature taken, then be allowed to enter the facility to deliver supplies to refill the vending machines inside the facility.

20.   Leland Webb passed away on October 14, 2020. The Survival Statute provides that Leland Webb's surviving spouse and sole heir, Wanda Webb, is the proper party to continue as Plaintiff on behalf of his estate. Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b); Tex. Estates Code § 201.003. No administration is pending, and none is necessary because Leland Webb had no debts or property. *Shepherd v. Ledford*, 962 S.W.2d 28 (Tex. 1998).

   3. The Approach

21.   No nursing home resident should have to reach the point of "failing to thrive" or be at the point of death before that resident is allowed to see his loved ones, at which point the elderly loved one may not even recognize or be able to appreciate the visit. Such a standard ought to be recognized as cruel in a civil society.

22.   Defendant Nursing Homes have not explained, much less with any rational basis, why staff and employees can come and go from the nursing homes and other long-term care facilities and also mingle in the wider community, yet family members who have a vested interest in protecting their vulnerable loved ones from disease and in many instances have voluntarily quarantined themselves for this reason may not visit those facilities.

23.   According to section 102.003(g) of the Texas Human Resources Code, "An elderly individual is entitled to privacy while attending to personal needs and a private place for receiving visitors or associating with other individuals unless providing privacy would infringe

on the rights of other individuals. This right applies to medical treatment, written communications, telephone conversations, meeting with family, and access to resident councils."

24. Defendant Nursing Homes impeded this right and violated Texas law without authority.

## V.    CLAIMS

### A. Claim 1 -- Declaration -- Defendants violated Tex. Human Res. Code §102.003(g).

25.  Defendant Nursing Homes' enforcement of Governor Abbott's Order enervated Plaintiffs Aline Renneberg's and Leland Webb's right to receive visitors as recognized by Texas Human Resources Code §102.003(g) and prevent their family members from exercising their medical powers of attorney and/or guardianship rights to make informed decisions for their loved ones' care. If they are unable to see Plaintiff nursing home residents, observe them and the care they were receiving, and communicate effectively with them, Plaintiffs Aline Renneberg's family members are and Leland Webb's family members were inhibited from exercising this right to make decisions in the patients' best interest as recognized and required by Texas Health and Safety Code § 166.152(e).

### B. Claim 2 – Declaration – Defendants violated the ADA.

26. Defendant Nursing Homes violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 § 504. Both Title II and Title III of the ADA and section 504 of the Rehabilitation Act of 1973 require that medical care providers provide individuals with disabilities full and equal access to their health care services and facilities; and reasonable modifications to policies, practices, and procedures when necessary to make health care services fully available to individuals with disabilities, unless the modifications would fundamentally alter the nature of the services. They also prohibit these nursing facilities from discriminating against disabled persons by denying them the opportunity "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."

27. As recipient of Medicaid Services by the state of Texas, resident of commercial nursing facilities, and persons who have physical and mental impairments that substantially limit their major life activities, Aline Renneberg and Leland Webb were entitled to the protections of the ADA Titles II & III. Renneberg currently has and Webb had dementia which caused them to become confused and sometimes renders them unable to even press the help button to call staff for help with personal and medical needs. Plaintiffs Aline Renneberg has and Leland Webb had trouble understanding and effectively communicating via "virtual visits" and phone calls.

28. Renneberg's daughter, Marcy, and Webb's wife, Wanda, needed to be a regular part of their health care routines and their medical care decision making as the medical power of attorney. They were unable to carry out this duty adequately without attending to their loved ones in person and observing their care and condition. During months in 2020, Defendant nursing homes violated the ADA and Rehabilitation Act of 1973. The provision for "virtual" visits did not provide the equal access to them as it did to others who are not as severely disabled both physically and mentally.

29. Defendant Nursing Homes discriminated against Renneberg and Webb based on their disabilities by offering only virtual visits and visits through a screen, none of which allowed them to participate and receive the full benefits of the services to which they were entitled. Additionally, they did not receive full and equal access to visitors.

**C. Claim 3 –Defendants violated the Texas Human Resources Code & Centers for Medicare and Medicaid Services Regulations.**

30. The Texas Legislature recognized in passing Chapter 48 of the Texas Human Resources Code that the elderly and disabled deserve special protection from abuse and neglect because they are vulnerable.

31. The adopted definition of abuse includes "unreasonable confinement", and the definition of neglect includes "the failure to provide for one's self the goods or services, including medical services, which are necessary to avoid physical or emotional harm or pain or the failure of a caretaker to provide such goods or services." See Tex. Human Res. Code §48.002 (a)(2) & (4).

32. Skilled nursing facility employees and staff have a duty to report the abuse and neglect of their elderly residents, and HHSC has a duty to investigate and remedy those reports. The one-size-fits none approach that was taken over the last year left no room for remedying the many cases, including that of Aline Renneberg and Leland Webb, of abuse and neglect of the elderly in unreasonable confinement and deprivation.

33. The Centers for Medicare and Medicaid Services (CMS), which regulates Defendant Nursing Home on the federal level, is governed by 42 CFR § 483.10 titled "Resident Rights" and states "The resident has a right to a dignified existence, self-determination, and communication with and access to persons and services inside and outside the facility. A facility must protect and promote the rights of each resident […] Visit and be visited by others from outside the facility."[1] Further, it states that "A facility must promote the exercise of rights for each resident, including any who face barriers, such as communication problems, hearing problems and cognition limits, in the exercise of these rights. A resident, even though determined to be incompetent, should be able to assert these rights based on his or her degree of capability."

---

[1] https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R70SOMA.pdf.

34. Clearly, the federal government recognizes the important right of nursing home residents to have visits by their loved ones, who are essential to their care and well-being. Defendant Nursing Homes violated this fundamental and important right of Plaintiff nursing home residents who face barriers to using alternate forms of communication and who were essentially imprisoned in their last days in a nursing facility without the ability to see their loved ones.

35. CMS Regulation 483.13(b) "Abuse: The resident has the right to be free from verbal, sexual, physical, and mental abuse, corporal punishment, and involuntary seclusion." It goes on to explain in the comments that:

> "Involuntary seclusion" is defined as separation of a resident from other residents or from her/his room or confinement to her/his room (with or without roommates) against the resident's will, or the will of the resident's legal representative. Emergency or short term monitored separation from other Residents will not be considered involuntary seclusion and may be permitted if used for a limited period of time as a therapeutic intervention to reduce agitation until professional staff can develop a plan of care to meet the resident's needs.

CMS Regulation 483.13(b).

36. Again, the federal government in its regulations recognizes that involuntary seclusion of nursing home residents is tantamount to abuse. In this case, Defendant Nursing Home involuntarily secluded Plaintiffs Renneberg and Webb from others, specifically their loved ones, against their will and the will of their legal representatives. The "emergency" argument ceased to be maintained with any integrity as a year elapsed since the seclusion orders were put in place, and the seclusion of Plaintiffs Renneberg and Webb resulted in real injury in the form of agitation and decline in their health and well-being.

**D. Claim 4 – Declaration -- Breach of Contract & Mental Anguish**

37. Defendant Nursing Homes had a duty under the contract terms they entered into with Marcy and Aline Renneberg and Wanda and Leland Webb to abide by the regulations which govern Defendant Nursing Homes, to provide safe and quality care, and to provide opportunities for the nursing home resident to receive visitors and have access to the care and critical attention only her family members can provide. Defendant Nursing Homes failed to fulfill its contract. It harmed, neglected, and abused the Plaintiffs in its care. Defendant Nursing Homes could have allowed family members to visit residents following the same guidelines and sanitary conditions as employees and staff and even vending machine delivery men. Because it did not do so, they are in violation of their contract to provide services to the Plaintiff nursing home residents in their care and their legal representatives.

38. Defendant Nursing Homes were in a contractual relationship with Plaintiffs to care for Aline Renneberg and Leland Webb. Plaintiffs Leland Webb and Aline Renneberg were in a vulnerable position given their health condition and disabilities and were particularly susceptible to emotional distress because of them. Wanda Webb and her daughter, Melanie Webb and Marcy Renneberg witnessed the severe decline in health and well-being of Leland Webb and Aline Renneberg respectively. Based on the circumstances and its position as the caregivers for nursing home patients, Defendant Nursing Homes were uniquely positioned, having contracted for the care of Plaintiff residents, to know Plaintiffs were susceptible to this emotional distress. They suffered under it for months, losing hope, expressing anger at family members, and becoming despondent. The visitation ban caused a complete disruption to the Plaintiff Residents' routines, which are especially essential to dementia patients.

**E. Claim 5 -- Declaration -- San Gabriel nursing home violated Title 40, Rules §§ 19.401 and 19.402 of the Tex. Admin. Code by denying the right to visitors to its residents.**

39.     The Texas Administrative Code § 19.401 enumerates the protected rights of nursing home residents. Specifically, paragraph (c) outlines these rights including the right to "(16) receive visitors". Additionally, Texas Administrative Code § 19.402 states, "(b) The resident has the right to be free of interference, coercion, discrimination, or reprisal from the facility in exercising the resident's rights."[2]

40.     There is no contradiction with earlier Texas Administrative Code § 506.3, which states, "(2) the right of the patient, in collaboration with his or her physician, to make decisions involving his or her health care; [...] (12) the right to receive visitors at reasonable hours, within reasonable limitations, as may be required by the facility in its operation policies." Three reasons exist which confirm Title 40's provisions and the violation in this case. First, Plaintiffs are guaranteed the right to have a say in her health care plans. Plaintiffs and their legal medical decision-makers were willing to and desire to forego the so-called "preventative measures" such as a total isolation from visitors. Second, the right enumerated relates to limiting visits to certain hours of operation, not whether the right may effectively be wholly denied. Finally, and most importantly, the provisions of Title 40, Section 19.402 were amended to take effect in March 2020 while Title 26, Section 506.33 was adopted to be effective in 2004, meaning the later provision, Title 40, ought to take precedence.

41.     Given these facts, the Defendants violated the protected rights of nursing home residents by denying them their right to receive visitors, which constitutes "interference" with the exercise

---

[2]https://texreg.sos.state.tx.us/public/readtac$ext.TacPage?sl=R&app=9&p_dir=&p_rloc=&p_tloc=&p_ploc=&pg=1&p_tac=&ti=40&pt=1&ch=19&rl=402

of that right. This Court should declare that Defendant Nursing Home violated the HHS rules protecting Plaintiff residents' rights to receive visitors.

### F.  Claim 6 -- Intentional Infliction of Emotional Distress

42.     From approximately mid-March until September of 2020, Defendants intentionally isolated Plaintiff residents from their family members who were essential to their care and physical and mental well-being. This extreme conduct, which kept them in isolation, caused their severe decline. They became extremely nervous, fearful, and hopeless. Plaintiff Leland Webb expressed anger at his wife for not visiting him, even though she was being prohibited from visiting against her will. Plaintiff residents lost the will to interact with others or eat and their health and well-being declined severely. It caused a complete disruption to the Plaintiff Residents' routines, which are especially essential to dementia patients.

43.     Defendant nursing homes are responsible for the emotional distress of Plaintiffs Renneberg and Webb and thus should be held liable for damages by this Court amounting to no less than $100,000 each.

### ATTORNEY'S FEES

44.     Plaintiff seeks recovery of its reasonable and necessary attorney's fees pursuant to Chapters 37 & 38 *et seq* of the Texas Civil Practice and Remedies Code.

45.     Plaintiff seeks recovery of its reasonable and necessary attorney's fees for violations of the ADA pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794(a), "In any action or proceeding to enforce or charge a violation of a provision of this title [29 USCS §§ 790 et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

## CONDITIONS PRECEDENT

46.  All conditions precedent have occurred.

## PRAYER FOR RELIEF

47.  WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray this Court grant the for the following relief:

  i.  Award nominal and compensatory damages in the amount of at least $100,000 against each Defendant Nursing Home;

  ii.  Award costs and attorneys' fees;

  iii.  Grant all additional relief to which Plaintiffs may be entitled at law or equity.


Respectfully submitted this June 22, 2021,


By: /s/Warren V. Norred
Warren V. Norred, SBN 24045094, warren@norredlaw.com
NORRED LAW, PLLC
515 E. Border, Arlington, TX 76010
O. (817) 704-3984, F. (817) 524-6686

CERTIFICATE OF SERVICE - I certify the above First Amended Complaint was served on June 22, 2021 to all counsel of record by the Court's efile system.

> /s/Warren V. Norred
> Warren V. Norred